IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CINDY ROYBAL,

       Plaintiff,

v.                                            No. CIV 02-1463  JP/RHS

BOARD OF REGENTS OF
NEW MEXICO HIGHLANDS UNIVERSITY,

       Defendant.

## MEMORANDUM OPINION AND ORDER

On October 15, 2003, Defendant filed a Motion for Summary Judgment (Doc. No. 39). On October 28, 2003, Plaintiff filed a Motion to Strike Exhibits in Defendant's Memorandum in Support of Summary Judgment (Doc. No. 44).  On November 17, 2003, Defendant filed a Motion to Strike Portions of Testimony Offered by Plaintiff in Support of Her Opposition to Summary Judgment (Doc. No. 51).  Having carefully reviewed the briefs, the case law, and the evidence in the record, this Court will deny both of the motions to strike, and grant Defendant's Motion for Summary Judgment.

## I.    MOTIONS TO STRIKE

The first task before the Court is to determine which facts the Court may consider when ruling on Defendant's summary judgment motion.  In ruling on a motion for summary judgment, a court may only consider admissible evidence.  World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).  Any affidavits submitted in connection with a motion for

summary judgment must be based on personal knowledge, set forth such facts as would be admissible in evidence, and affirmatively show that the affiant is competent to testify as to the subject matter.  See FED. R. CIV. P. 56(e).  Materials that do not measure up to the standards of Rule 56 are subject to a motion to strike. See Noblett v. Gen. Elec. Credit Corp., 400 F.2d 442, 445 (10th Cir. 1968); Ortiz v. Wingard, 173 F.Supp.2d 1155, 1163 (D.N.M. 2001).

Plaintiff moves to strike certain exhibits in Defendant's Memorandum in Support of Summary Judgment (Doc. No. 40) on the grounds that statements contained therein are hearsay, lack foundation, are conclusory, and lack proper authentication.  Similarly, Defendant moves to strike portions of testimony offered by Plaintiff on the grounds that it contains impermissible lay opinion, conclusory statements, hearsay, and statements that are irrelevant to any issue in this lawsuit.

Due to the voluminous nature of the exhibits and testimony and the sheer number of objections raised by both parties in their motions to strike, ruling on these motions would take as much of the Court's time and resources as would ruling on the actual motion for summary judgment.  The facts cited in this Memorandum Opinion and Order that are necessary for ruling on the motion for summary judgment have been taken from evidence in the record that the Court has determined is appropriate for consideration under FED. R. CIV. P. 56(e).  To the extent that the Court relied on evidence to which the parties have raised objections, the Court has noted its reasons for finding that evidence admissible and, accordingly, denies Plaintiff's and Defendant's Motions to Strike as to that evidence.  The Court has similarly disregarded information discussed in the parties' motions to strike that the Court has determined does not constitute admissible evidence.

2

## II.    BACKGROUND

The Court will view the facts in the light most favorable to the plaintiff.  See EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1189 (10th Cir. 2000).  The following are the facts, established by admissible evidence, that most favor Plaintiff.  Defendant New Mexico Highlands University (the "University") is a state educational institution located in Las Vegas, New Mexico.  From March 1985 through June 30, 2002, Plaintiff was continuously employed by the University as Head Women's Basketball Coach.  From June of 2000 through May 5, 2002, Plaintiff also held the position of University Athletic Director for both the men's and women's athletic programs.  Plaintiff's employment contract for the Athletic Director position states that Plaintiff was an "at will" employee who "serves at the pleasure of the [University] President."  Def. Mem. (Doc. No. 40) Ex. A.[1]  The duration of Plaintiff's employment contract was one year, from July 1, 2001 through June 30, 2002.  Id.

During the fall of 2001, University Interim President Dr. James Fries received several complaints from different groups regarding Plaintiff's job performance as Athletic Director.  Dr. Fries was approached by members of the University Booster Club, who complained that Plaintiff did not communicate with them effectively regarding their fund raising efforts for the University's athletic program.  Plf. Mem. (Doc. No. 47) Ex. 2 at 33-34.  Dr. Fries was also approached by members of the Faculty Athletic Committee, who voiced concerns about Plaintiff's management of the athletic department.  Id. at 37-38. In addition, Dean of Education James Abreu had

---

[1]  In Plaintiff's Motion to Strike (Doc. No. 44), Plaintiff objects to the admissibility of the employment contract offered as an exhibit to Defendant's brief.  However, Defendant has properly authenticated this document, and it is therefore admissible under FED. R. CIV. P. 56(e). Def. Reply Mem. (Doc. No. 53) Ex. T.

informed Dr. Fries that coaches within the athletic department were considerably unhappy with Plaintiff's management style. Id. at 46-47.[2]

In January of 2002, Plaintiff submitted a proposal to Dr. Fries regarding the University's compliance with new NCAA rules.  The new rules required the University to carry ten sports programs, whereas at the time the University had only nine programs.  Plaintiff's proposal recommended eliminating the women's soccer program and replacing it with women's golf and women's track programs.  This proposal sparked considerable controversy on campus, and caused the student senate to convene a public meeting to discuss the merits and ramifications of Plaintiff's proposal. Plf. Mem. (Doc. No. 47) Ex. 1 at 31-32.  At that meeting, it was revealed to Dr. Fries that there was far less urgency for bringing the University into compliance with the new NCAA rules than Plaintiff had previously led him to believe.[3]

Shortly after the student senate meeting, Dr. Fries asked Plaintiff to resign as the University Athletic Director.  Plaintiff refused to resign her position.  Soon thereafter, Plaintiff submitted a letter to Dr. Fries asserting that his request for her resignation was made in response to her attempts to bring the University into compliance with Title IX of the Education

---

[2] In Plaintiff's Motion to Strike (Doc. No. 44), Plaintiff objects to the evidence that such statements were made to Dr. Fries on the grounds that such statements constitute impermissible hearsay.  Yet, as Defendant points out in its Response to Plaintiff's Motion (Doc. No. 51), the challenged statements in Defendant's exhibits are not offered for the truth of the matters asserted therein.  Rather, the statements are offered to demonstrate that Dr. Fries had reason to be concerned about Plaintiff's job performance.  Therefore, such statements are not rendered inadmissible by the hearsay rule.  See FED. R. EVID. 801, 802.

[3] Plaintiff had informed Dr. Fries that the University was required to comply with the new NCAA rules by the fall of 2002.  Plf. Mem. (Doc. No. 47) Ex. 2 at 40-42.  However, at the student senate meeting, Plaintiff conceded that the deadline for implementing the new rules was actually the fall of 2005.  Id. at 42.

Amendments of 1972, 20 U.S.C. § 1681 et seq. Def. Mem. (Doc. No. 40) Ex. D.  On March 5,

2002, Dr. Fries notified Plaintiff that she was terminated as Athletic Director, effective May 5,

2002. Id. Ex. H.  Dr. Fries informed Plaintiff that she would be placed on immediate leave from

that position.[4] Id.  Dr. Fries also stated that Plaintiff would remain employed as Head Women's

Basketball Coach, at the salary level she had held before her promotion to Athletic Director plus a

3 percent increase.  Id.

On or about March 12, 2002, Plaintiff filed a Charge of Discrimination with the Equal

Employment Opportunity Commission (the "EEOC").  Def. Mem. (Doc. No. 40) Ex. I.  Plaintiff,

a 53 year-old Hispanic woman, alleged that her termination constituted an act of discrimination by

the University on the basis of her gender, national origin, and age.[5]  Id.  Plaintiff further alleged

that her termination was an act of retaliation for her opposition to discriminatory behavior by the

University. Id.

After terminating Plaintiff as Athletic Director, Dr. Fries offered the position of Interim

Athletic Director to Professor Roy Lujan, who declined to accept the position.  Dr. Fries then

offered the position to Dean Abreu, who also declined the offer.  On the recommendation of both

Professor Lujan and Dean Abreu, Dr. Fries next offered the position to Professor Dennis

Francois, who accepted the position.  Professor Francois holds a Ph.D. in sports administration, a

master's degree in athletic administration, and coaching and management experience in collegiate

---

[4] Plaintiff asserts that the documentary evidence of the March 5, 2002 letter that Dr. Fries sent to Plaintiff is inadmissible for lack of authentication and foundation.  However, Defendant has properly authenticated the document. Def. Reply Mem. (Doc. No. 52) Ex. A.

[5] Although the Charge of Discrimination alleges that the University discriminated against Plaintiff on the basis of her age, Plaintiff did not include a claim of age discrimination in the original complaint.  (Doc No. 1).  No amended complaint has been filed.

athletic departments. Def. Mem. (Doc. No. 40) Ex. G.

In March of 2002, Professor Francois was approached by William Maes, the University's Sports Information Director. Def. Mem. (Doc. No. 40) Ex. F at 3. Mr. Maes informed Professor Francois that he had observed pornographic material on a laptop computer that the University had issued to Plaintiff for use in her position as Athletic Director. Id. Professor Francois notified Dr. Fries about these allegations. Id. Shortly thereafter, Plaintiff returned the laptop computer to the University. Prior to returning the computer, Plaintiff had asked Elizabeth Orem in the University Alumni Office to remove Plaintiff's personal files from the laptop. Def. Reply Mem. (Doc. No. 53) Ex. U at 198-99. Ms. Orem carefully examined the files on the laptop computer and removed Plaintiff's personal files. Plf. Mem. (Doc. No. 47 ) Ex. 6-7 at 1. Ms. Orem did not notice any pornographic or inappropriate material during this examination of Plaintiff's laptop computer. Id.

After Plaintiff returned the laptop computer to the University, Dr. Fries opened an investigation in accordance with University policy. Def. Mem. (Doc. No. 40) Ex. C at 6. Upon receiving the laptop computer from Plaintiff, Dr. Fries transferred the computer to Max Baca, Director of the University Computer Network Services. Id. Mr. Baca examined the laptop computer and discovered inappropriate images that had been downloaded onto the computer's hard drive. Def. Reply Mem. (Doc. No. 53) Ex. X at 2. Mr. Baca reported his findings to Dr. Fries and provided copies of some images to Dr. Fries and to University police personnel. Id.[6]

In early April of 2002, Professor Francois was contacted by a member of the women's

---

[6] Although Plaintiff concedes that the images discovered on the laptop computer hard drive were inappropriate for viewing by a University employee on University equipment, Plaintiff disputes that the images were in fact pornographic. Plf. Mem. (Doc. No. 47) at 9. Plaintiff further disputes that she had any knowledge about the images or how they were downloaded onto the laptop computer. Id. at 8-9.

basketball team who said that several team members wished to talk to him about the women's basketball program.  Def. Mem. (Doc. No. 40) Ex. F at 3.  Later that day, Professor Francois and Faculty Athletic Committee member Professor David Hacker met with nine members of the women's basketball team.  Id.  The team members voiced numerous complaints about Plaintiff's performance as Head Women's Basketball Coach, alleging, among other things, that she was mentally abusive, harassing and treated injured players poorly.[7]  Id.

On April 12, 2002, Professor Francois met with Plaintiff to discuss the allegations made by the women's basketball team members, as well as the discovery of inappropriate images on Plaintiff's laptop computer.  Plf. Mem. (Doc. No. 47) Ex. 3 at 141.  Unbeknownst to Professor Francois, Plaintiff tape recorded the conversation.  Id. at 143.  During the course of the meeting, Professor Francois suggested that Plaintiff resign from her position as Head Women's Basketball Coach.  Id. at 150.  Professor Francois informed Plaintiff that if she did not resign, he would recommend that her employment contract not be renewed.  Id.  Plaintiff refused to resign her position.  Plf. Mem. (Doc. No. 47) Ex. 6-1 at 2.  Plaintiff later sent Professor Francois a letter in which she reiterated her refusal to resign. Def. Mem. (Doc. No. 40) Ex. L.  Soon after her meeting with Professor Francois, Plaintiff produced a note from her doctor stating that she should be excused from work indefinitely.  Id. Ex. M.  Plaintiff did not return to work at the University after April 14, 2002.  Id. Ex. F at 5.

Plaintiff continued to receive compensation as Head Women's Basketball Coach until June 30, 2002.  Id. Ex. B at 45.  Plaintiff began searching for other employment in late April or May of

---

[7]  Although Plaintiff objects that these statements are inadmissible hearsay, the Court finds, for the reasons articulated in footnote 2 supra, that this evidence is admissible because it is not offered to prove the truth of the matter asserted.  Def. Mem. (Doc. No. 51) at 8.

2002.  Id. at 300.  Plaintiff was offered a position as Girls' Head Basketball Coach at Pojoaque

Valley High School by letter dated June 13, 2002. Id. Ex. O.  The letter stated that the offer was

to be accepted or rejected by June 26, 2002.  Id.  Plaintiff accepted this position by signing the

offer letter from Pojoaque Valley High School on either June 14 or June 24, 2002.  Id.  On June

13, 2002, an article published in the SANTA FE NEW MEXICAN stated that Plaintiff had accepted a

coaching position with the Pojoaque Valley High School  Id. Ex. Q.  On June 25, 2002,

University Director of Human Resources Wilton Rogers sent Plaintiff a letter requesting that she

arrange for an out-process interview with the University.  Plaintiff responded to Mr. Rogers by a

letter dated July 10, 2002, in which she stated that she had not accepted another position and that

she still considered herself to be an employee of the University.  Id. Ex. R.

## III.    STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue of material fact and the

moving party is entitled to summary judgment as a matter of law.  FED. R. CIV. P. 56(c).  When

applying this standard, the Court examines the factual record and reasonable inferences therefrom

in the light most favorable to the party opposing summary judgment.  Applied Genetics Int'l, Inc.

v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  The moving party bears the

initial burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett,

477 U.S. 317, 325 (1986).  Only then does the burden shift to the non-movant to come forward

with evidence showing that there is a genuine issue of material fact.  Bacchus Indus., Inc. v. Arvin

Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).

An issue of material fact is genuine if a reasonable jury could return a verdict for the non-

movant.  Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996).  The non-moving party may not

avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings.

Bacchus, 939 F.2d at 891.  To withstand a motion for summary judgment, the non-movant must

make specific reference to admissible evidence in the record.  See Gross v. Burggraf Constr. Co.,

53 F.3d 1531, 1546 (10th Cir. 1995).  Unsubstantiated allegations, no matter how true they might

be, cannot be considered.  See Id.

## IV.    DISCUSSION

### A.    Claims Arising From Plaintiff's Termination as Athletic Director

#### 1.      Discriminatory Treatment Claim

A plaintiff alleging discriminatory treatment under Title VII must present either direct or

indirect evidence sufficient to show intentional discrimination.  See Kendrick v. Penske Transp.

Serv., 220 F.3d 1220, 1225 (10th Cir. 2000); Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160,

1166 (10th Cir. 2000).  Here, Plaintiff offers no direct evidence of discrimination.  The Court

therefore must determine if there is sufficient indirect evidence of discrimination for Plaintiff's

claim to survive summary judgment.

In analyzing circumstantial evidence of discrimination under Title VII, courts apply the

burden-shifting approach set forth by the Supreme Court in McDonnell Douglas Corp. v. Green,

411 U.S. 792, 802-04 (1973). See also Kendrick, 220 F.3d at 1225.  Under this framework, a

plaintiff must first establish a prima facie case of discrimination.  McDonnell Douglas, 411 U.S. at

802; Kendrick, 220 F.3d at 1226.  If the plaintiff establishes a prima facie case, then the burden

shifts to the defendant to demonstrate a "legitimate, non-discriminatory reason" for its action.

McDonnell Douglas, 411 U.S. at 802; Kendrick, 220 F.3d at 1226.  If the defendant offers a

legitimate non-discriminatory reason, the burden shifts back to the plaintiff to show that the

defendant's reason is mere pretext and unworthy of belief.  McDonnell Douglas, 411 U.S. at 804;

Kendrick, 220 F.3d at 1226.

       a.      Prima Facie Case

      In order to make out a prima facie case of discrimination, a plaintiff must show that: 1) she

belongs to a protected class; 2) she was qualified for the job; 3) despite her qualifications, she was

discharged; and 4) the job was not eliminated after her discharge.  See Kendrick, 220 F.3d at

1226; Perry v. Woodward, 199 F.3d 1126, 1138 (10th Cir. 1999).  In this case, Defendant does

not dispute that Plaintiff, as a Hispanic female, is a member of a protected class; that Plaintiff was

terminated from her position as Athletic Director; and that the position of Athletic Director was

not eliminated after Plaintiff's discharge.

      With respect to the second requirement - that Plaintiff was qualified for the position of

Athletic Director - the fact that Plaintiff held the position of Athletic Director for almost two

years prior to her discharge is sufficient to show that she was qualified.  See English v. Colorado

Dep't of Corr., 248 F.3d 1002, 1008 (10th Cir. 2001) (finding that extensive period of time that

plaintiff held position supported inference that he was qualified for the position).  Defendant

argues that Plaintiff's poor job performance, which allegedly led to her termination, serves as

evidence that she was not qualified for the position.  The Court determines, however, that

Defendant's argument is better suited for the pretext stage of the McDonnell Douglas analysis,

and should not be used to undermine Plaintiff's prima facie case.  See MacDonald v. Eastern

Wyoming Mental Health Ctr., 941 F.2d 1115, 1121 (10th Cir. 1991) (employer's reason for

discharging employee properly assessed at pretext stage, and could not be used to short circuit

prima facie case). Thus, Plaintiff has established a prima facie case of discrimination.

Defendant argues at length that Plaintiff's deposition testimony regarding the reasons for her termination as Athletic Director undermine her prima facie case. Specifically, Defendant argues that Plaintiff's own testimony reveals that she was terminated as a direct result of her support for gender equity in sports, rather than because of any discriminatory animus. Def. Mem. (Doc. No. 40) at 11-14. According to Defendant, Plaintiff's testimony demonstrates an inability to establish that she was terminated under circumstances that give rise to an inference of unlawful discrimination under Title VII, and therefore her prima facie case is defective. Id. at 14. Yet, Plaintiff has presented sufficient evidence in the record to satisfy the four-part test established by the Supreme Court and the Tenth Circuit, which is all Plaintiff must do to make out a prima facie case. Defendant's argument regarding the lack of evidence of any discriminatory animus will be analyzed at the pretext stage.

      b.      Legitimate, Non-discriminatory Reason

Since Plaintiff established a prima facie case, Defendant must articulate a facially non-discriminatory reason for terminating Plaintiff from her position as Athletic Director. See English, 248 F.3d at 1009. To meet this burden, Defendant must clearly set forth, through the introduction of admissible evidence, a legitimate, non-discriminatory reason for discharging Plaintiff. See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-55 (1981); EEOC v. Flasher Co., Inc., 986 F.2d 1312, 1316 (10th Cir. 1992).

Defendant asserts that Plaintiff was terminated for various deficiencies in her work performance. These deficiencies include Plaintiff's unwillingness or inability to communicate effectively with students, coaches, faculty, and alumni, as well as the fallout resulting from her proposal to eliminate the women's soccer program. The Court finds that these purported

11

deficiencies in Plaintiff's job performance constitute a legitimate, non-discriminatory reason for discharging Plaintiff from her position as Athletic Director.

      c.     Pretext

Since Defendant has articulated a legitimate, non-discriminatory reason for discharging Plaintiff, the burden of persuasion shifts back to Plaintiff to show that Defendant's claimed reason for terminating her was pretextual, that is, "unworthy of credence." See Munoz, 221 F.3d at 1167. A plaintiff may show pretext either directly by demonstrating that a discriminatory reason more likely motivated the employer, or indirectly by demonstrating that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256; McCowan v. All Star Maint., 273 F.3d 917, 922 (10th Cir. 2001). Mere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment. Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988). A plaintiff typically makes a showing of pretext in one of three ways: 1) with evidence that the defendant's stated reason for the adverse employment action was false; 2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or 3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff. Kendrick, 220 F.3d at 1230.

After thoroughly examining the record, the Court finds that Plaintiff has presented no admissible evidence that Defendant's non-discriminatory reason for terminating her was pretextual. Plaintiff cites no evidence of pretext in her Response Memorandum, nor does Plaintiff

make an argument that such evidence exists.[8]  Instead, Plaintiff asserts that "summary judgment will not be granted until no pretext has been found."  This assertion misstates the burden of persuasion in the <u>McDonnell Douglas</u> framework   The burden lies with Plaintiff to show that pretext exists. <u>See</u>, <u>e.g.</u>, <u>Kendrick</u>, 220 F.3d at 1230; <u>Munoz</u>, 221 F.3d at 1167.

 Plaintiff does not challenge the veracity of Defendant's proffered reason for terminating her as Athletic Director.  In fact, Plaintiff attests that her termination as Athletic Director was the "end result" of the fallout from her proposal to eliminate the women's soccer program, which corroborates Defendant's reason for terminating Plaintiff.  Plf. Mem. (Doc. No. 47) at 2.  While Plaintiff has offered testimony that she was performing her job satisfactorily, such evidence is not sufficient to show that Defendant's articulated reason was pretextual.  The relevant inquiry is not whether Defendant's belief regarding Plaintiff's job performance was correct, but rather, whether Defendant honestly held that belief and acted upon it in good faith.  <u>See</u> <u>Bullington v. United Air Lines, Inc.</u>, 186 F.3d 1301, 1318 (10th Cir. 1999); <u>Sanchez v. Phillip Morris, Inc.</u>, 992 F.2d 244, 247-48 (10th Cir. 1993).

Plaintiff offers affidavit testimony of former University President Selimo Rael that her

---

 [8]  Plaintiff's only assertion that would support a showing of pretext is an unsubstantiated allegation that Defendant's discriminatory intent is evidenced by statistics and the use of racial slurs.  Plf. Mem. (Doc. No. 47) at 18.  Yet, at no point does Plaintiff actually refer to any statistics, nor does the record contain any statistical data.  There is evidence that Professor Francois made racial slurs in the distant past.  However, the record indicates that Dr. Fries, not Professor Francois, was the decision-maker responsible for terminating Plaintiff as Athletic Director.  Plaintiff has not alleged that Dr. Fries has made racial slurs.  Nor has Plaintiff alleged that there is any nexus between Professor Francois' long ago racial slurs and Dr. Fries' decision to terminate Plaintiff as Athletic Director.  Thus, evidence of these racial slurs is insufficient to show pretext.  <u>See</u> <u>McKnight v. Kimberly Clark Corp.</u>, 149 F.3d 1125, 1129 (10th Cir. 1998) (to demonstrate pretext, plaintiff must show discriminatory statements were made by decision-maker and that nexus exists between statement and decision to terminate plaintiff).

termination as Athletic Director contravened a written University policy for terminating at-will employees.  According to Mr. Rael's testimony, this policy states that an at-will employee may be terminated only after having been given an opportunity to be heard both in writing and orally before the President, and only after "a fair and objective weighing of the reasons for termination and the employee's responses."  See Plf. Mem. (Doc. No. 47) Ex. 6-3.[9]  However, the text of the actual employment policy referenced by Mr. Rael flatly contradicts his testimony.  The actual policy states that "at will" employees are subject to discharge at any time during the term of their appointment, without any statement of cause, upon written notice of termination.  Def. Reply Mem. (Doc. No. 53) Ex. T at Att. 2A.  Thus, the unsubstantiated testimony offered by Mr. Rael does not support a showing that Defendant's proffered reason for terminating Plaintiff was pretextual.

Plaintiff also offers evidence that the student senate meeting convened for the purpose of discussing Plaintiff's proposal to eliminate the women's soccer program did not comport with unwritten University policy.  See Plf. Mem. (Doc. No. 47) Ex. 6-2, 6-3.   Yet, since this purported policy does not relate to the adverse employment action at issue in this claim, its alleged violation does not support a reasonable inference of pretext.  See Kendrick, 1220 F.3d at 1230.  Thus, Plaintiff has failed to show any evidence that Defendant's legitimate, non-

---

[9]  The Court finds that Mr. Rael's testimony is inadmissible under Rule 56(e) and the Best Evidence Rule, because the affiant has offered testimony regarding the substance of a written policy without offering the written policy into evidence. Def. Motion to Strike  (Doc. No. 51) at 11; FED. R. EVID. 1002, 1003.  Even if Mr. Rael's testimony were admissible, it is contradicted by the actual content of the policy itself. Def. Reply Mem. (Doc. No. 53) Ex. T at Att. 2A. Therefore, Mr. Rael's testimony would not be sufficient evidence to support a showing of pretext. See, e.g., Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997) ("The mere existence of a scintilla of evidence in support of the non-movant's position is insufficient to create a dispute of fact that is genuine . . . .").

discriminatory reason for Plaintiff's termination was pretextual or unworthy of belief. Accordingly, Defendant is entitled to summary judgment on Plaintiff's discrimination claim arising from her termination as Athletic Director.

       2.       Retaliation Claim

       Title VII prohibits an employer from retaliating against an employee who has opposed any practice made unlawful by Title VII, or because the employee has made a charge, testified, assisted, or participated in any manner in an investigation under Title VII. See 42 U.S.C. § 2000e-3(a). In analyzing Title VII retaliation claims, courts apply the McDonnell Douglas burden-shifting approach. To survive summary judgment, a plaintiff must establish a prima facie case of retaliation by showing that: 1) she engaged in protected opposition to discrimination; 2) she suffered an adverse employment action; 3) a causal connection exists between the protected activity and the adverse employment action. O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1252 (10th Cir. 2001). Once a plaintiff makes a prima facie showing, the burden shifts to the defendant, who must articulate a non-discriminatory reason for the adverse employment action. If the defendant makes such a showing, then the plaintiff must respond by showing that the defendant's articulated reason is pretextual. McDonnell Douglas, 411 U.S. at 804; O'Neal, 237 F.3d at 1252.

       a.       Prima Facie Case

       Plaintiff has failed to meet the first requirement - that she engaged in protected opposition to discrimination - required to establish a prima facie case of retaliation. There is no evidence in the record that Plaintiff engaged in any protected conduct prior to her termination as Athletic Director on March 5, 2002. The retaliation provision of Title VII applies to opposition to an

employment practice made unlawful by Title VII, or to such actions as filing an EEOC charge alleging a Title VII violation, or participating in an investigation or proceeding regarding a Title VII violation.  See 42 U.S.C. § 2000e-3(a); Petersen v. Utah Dep't of Corr., 301 F.3d 1182, 1187-88 (10th Cir. 2002).

Plaintiff asserts that she was terminated as a direct result of her opposition to Defendant's "unlawful discriminatory practices."  Plf. Complaint (Doc. No. 1) ¶ 30.  Plaintiff seems to argue that her proposal to bring the University into compliance with new NCAA rules qualifies as protected opposition to discrimination.  However, Plaintiff's opposition to the University's alleged non-compliance with Title IX of the Education Amendments of 1972 does not constitute "protected conduct" for purposes of a Title VII retaliation claim. See Lowrey v. Texas A&M Univ. Sys., 117 F.3d 242, 249 (5th Cir. 1997) (Title VII provides no remedy for retaliation against individuals who raise charges of non-compliance with the substantive provisions of Title IX).  Plaintiff does not claim to have engaged in any other type of opposition to discriminatory practices prior to her termination as Athletic Director.[10]  Since there is no evidence that Plaintiff engaged in protected activity, Plaintiff has failed to make out a prima facie case that her termination as Athletic Director was an act of retaliation under Title VII.  Accordingly, Defendant is entitled to summary judgment for Plaintiff's retaliation claim arising from her termination as Athletic Director.

---

[10]  In fact, Plaintiff testified in her deposition that prior to filing her EEOC Charge of Discrimination on March 12, 2002, she did not believe that she was retaliated against for her opposition to discriminatory practices under Title VII.  Def. Mem. (Doc. No. 40) Ex. B at 272.

**B.**     **Claims Arising from Plaintiff's Termination as Head Basketball Coach**

1.     Exhaustion of Administrative Remedies

A Plaintiff must exhaust her administrative remedies by filing a timely charge of

discrimination with the EEOC prior to filing a civil action under Title VII in federal court.  See

Jones v. Denver Post Corp., 203 F.3d 748, 755 (10th Cir. 2000); Seymore v. Shawyer & Sons,

Inc., 111 F.3d 794, 799 (10th Cir. 1997).  Generally, a Title VII claim will be time-barred unless

the Plaintiff files a charge of discrimination with the EEOC within 300 days of the alleged

discriminatory or retaliatory act.  See Seymore, 111 F.3d at 799.  Until recently in the Tenth

Circuit, the "continuing violation doctrine" allowed a plaintiff to seek judicial relief for claims not

listed in the original charge filed with the EEOC, as long as those additional claims are "like or

reasonably related to" the allegations asserted in the original EEOC charge of discrimination.  See

Martinez v. Potter, 347 F.3d 1208, 1210-11 (10th Cir. 2003); Davidson v. America Online, Inc.,

337 F.3d 1179, 1183-84 (10th Cir. 2003).  However, the Supreme Court's 2002 decision in Nat'l

R.R. Passenger Corp. v. Morgan has abrogated the continuing violation doctrine.  536 U.S. 101,

110-113 (2002).  The Court in Morgan held that a plaintiff must file a separate EEOC charge for

each discrete discriminatory or retaliatory act, even when a subsequent act is related to acts

alleged in a prior, timely-filed EEOC charge.  Id. at 113; see also Martinez, 347 F.3d at 1210-11.

Under the ruling in Morgan, a Plaintiff cannot seek judicial relief for incidents that occur after the

original EEOC charge was filed unless the Plaintiff has timely filed separate EEOC charges for

each subsequent discriminatory or retaliatory act.  See Martinez, 347 F.3d at 1211.

Defendant argues that Plaintiff cannot seek relief for claims arising from the incidents

leading up to her discharge as Head Women's Basketball Coach because Plaintiff did not timely

17

file a separate EEOC charge for these discrete discriminatory and retaliatory acts.  Defendant

asserts that the original EEOC charge that Plaintiff filed on March 12, 2002 is based solely on her

termination as Athletic Director.  Def. Mem. (Doc. No. 40) Ex. I.  Defendant contends that the

incidents surrounding Plaintiff's termination as Head Women's Basketball Coach took place after

this EEOC charge was filed, and constitute separate acts that Plaintiff alleges were discriminatory

or retaliatory.

      Plaintiff disputes Defendant's assertion that she did not timely file another EEOC charge

for the incidents leading up to her discharge as Head Women's Basketball Coach.  Plaintiff asserts

that she supplemented her original charge of discrimination with a letter to the EEOC that

addressed her April 12, 2002 conversation with Professor Francois.  Plf. Mem.  (Doc. No. 47) at

20.  A copy of this letter, which is dated April 15, 2002, appears in the record.  Id. Ex. 6-1,

Att. 1.  In the letter, Plaintiff describes her conversation with Professor Francois, and recounts

how Professor Francois asked for her resignation as Head Women's Basketball Coach and

threatened to recommend that her employment contract not be renewed after it expired on June

30, 2002.  Id.  Plaintiff states in the letter that she believes Professor Francois' actions and

statements were made in retaliation to her filing the prior EEOC charge. Id.

      Plaintiff does not appear to have filed a formal EEOC charge repeating these allegations,

and the April 15, 2002 letter is not technically an EEOC charge of discrimination. The parties

have not addressed the issue of whether a plaintiff may fulfill the filing requirement by writing a

letter supplementing a prior charge of discrimination rather than by actually filing a new charge of

discrimination.  However, Plaintiff's letter sets forth essentially the same information that Plaintiff

would have provided in a new EEOC charge of discrimination.  Moreover, while not a formal

charge, the letter supplementing the original EEOC charge fulfills the two main functions of the

filing requirement: 1) to give notice of the alleged violation to the charged party;[11] and 2) to give

the EEOC an opportunity to conciliate the claim.  See Ingels v. Thiokol Corp., 42 F.3d 616, 625

(10th Cir. 1994).  Therefore, the Court finds that Plaintiff's April 15, 2002 letter satisfied the

requirement of filing a separate EEOC charge for the incidents that occurred during Plaintiff's

April 12, 2002 meeting with Professor Francois.

However, the letter contains only an allegation of retaliatory treatment; it makes no

assertion that Plaintiff's termination was an act of discrimination based on Plaintiff's gender,

national origin, or age.  Accordingly, Plaintiff may not assert a discrimination claim based on

Professor Francois' statements, because she has failed to exhaust her administrative remedies with

respect to such a claim.  Furthermore, Plaintiff's letter addresses only those incidents of retaliation

that occurred in her meeting with Professor Francois on April 12 - namely, his request that she

resign and his threat to recommend that her employment contract not be renewed.  Accordingly,

these are the only incidents for which Plaintiff may pursue her retaliation claim.  Although Plaintiff

argues that Defendant terminated her as Women's Head Basketball Coach by failing to renew her

employment contract, Plaintiff admits that this termination did not occur until after June 30, 2002.

Plf. Mem. (Doc. No. 47) at 12.  Since Plaintiff did not file an additional EEOC charge within 300

days of June 30, 2002 addressing that act, Plaintiff is barred from asserting a claim of retaliation

arising from that discrete incident. See 42 U.S.C. § 2000e-5(e).

---

[11]  While there is no evidence that Plaintiff sent a copy of the April 15, 2002 letter to
Defendant, the EEOC would presumably notify Defendant about these supplemental allegations
when investigating these alleged Title VII violations.

2.      Retaliatory Treatment

a.      Prima Facie Case

In order to survive summary judgment for her retaliation claim, Plaintiff first must make

out a prima facie case by showing that: 1) she engaged in protected opposition to discrimination;

2) she suffered an adverse employment action; and 3) a causal connection exists between the

protected activity and the adverse employment action.  O'Neal, 237 F.3d at 1252.  Defendant

concedes that Plaintiff meets the first requirement because she alleges that her termination was a

result of her filing an EEOC charge, which qualifies as "protected conduct" under Title VII.  Def.

Mem. (Doc. No. 40) at 20; 42 U.S.C. § 2000e-3(a).

Plaintiff has not made an argument that she meets the third requirement of the prima facie

case - that a causal connection existed between the protected activity and the adverse employment

action.  However, the Tenth Circuit has held that a causal connection may be shown by "evidence

of circumstances that justify an inference of retaliatory motive, such as protected conduct closely

followed by adverse action."  O'Neal, 237 F.3d at 1253 (quoting Burrus v. United Tel. Co. of

Kan., Inc., 683 F.2d 339, 343 (10th Cir. 1982)).  The Tenth Circuit has found that a one and a

half month period between the protected activity and the adverse employment action, by itself,

supported a showing of causation.  Id.  Plaintiff notified the EEOC about the alleged retaliatory

incidents by letter dated April 15, 2002, slightly more than one month after she filed her original

EEOC charge.  Accordingly, the close temporal relationship between Plaintiff's protected conduct

and the alleged adverse employment actions is sufficient to establish a causal connection between

the two incidents.  Therefore, Plaintiff has met the third requirement of the prima facie case.

With respect to the second requirement, Defendant argues that Plaintiff has failed to show

20

that she suffered an adverse employment action.  Plaintiff responds to this assertion by citing

Tenth Circuit authority holding that failure to re-hire constitutes an adverse employment action

under Title VII.  See Heno v. Sprint/United Mgmt. Co., 208 F.3d 847, 857 (10th Cir. 2000);

Sanchez v. Denver Pub. Sch., 164 F.3d 527, 533 (10th Cir. 1998). However, as discussed above,

Defendant's failure to re-hire Plaintiff is not at issue in this lawsuit. The only adverse employment

actions that Plaintiff may recover for in this suit are the request that she resign and Professor

Francois' threat to recommend that her employment contract not be renewed.

　　　There appears to be no controlling authority addressing the issue of whether a request to

resign or a threat to recommend that an employment contract not be renewed constitute adverse

employment actions under Title VII.  Defendant cites a Tenth Circuit case holding that a mere

threat to impose a harsh employment condition that was never carried out does not rise to the

level of an adverse employment action. See Cole v. Ruidoso Mun. Sch., 43 F.3d 1373, 1381.

(10th Cir. 1994).  However, this case is distinguishable from Cole because, viewing the facts in

the light most favorable to Plaintiff, Professor Francois subsequently did carry out his threat to

recommend that Plaintiff's employment contract not be renewed.  Since this recommendation

would constitute a significant change in Plaintiff's employment status, it would qualify as an

adverse retaliatory employment action under Title VII.  See Sanchez, 164 F.3d at 532 (quoting

Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 744 (1998)).  However, with respect to Professor

Francois' request that Plaintiff resign her position, the Court finds that Plaintiff has failed to show

that this act constituted an adverse employment action under Title VII.  In response to this

request, Plaintiff refused to resign as Head Women's Basketball Coach.  Thus, the request by

itself did not alter Plaintiff's employment status, or change the terms, conditions, or privileges of

her employment. <u>See</u> <u>Id.</u>

      b.      Legitimate, Non-Discriminatory Reason

Since Plaintiff has made out a prima facie case of retaliation, the burden shifts to

Defendant to articulate a legitimate, non-discriminatory reason for Professor Francois' threat to

recommend that Plaintiff's employment contract not be renewed. <u>Kendrick</u>, 220 F.3d at 1226.

Defendant asserts that Professor Francois had legitimate concerns about Plaintiff's job

performance as Head Women's Basketball Coach.  These concerns included the discovery of

inappropriate images on Plaintiff's laptop computer, as well as the complaints made by the

women's basketball team members about Plaintiff's poor coaching performance and her abusive

treatment of players. Def. Mem. (Doc. No. 40) at 23-24.  In addition, Defendant argues that

Professor Francois was concerned about the amount of vacation time that Plaintiff had intended to

take, and the deleterious effects that Plaintiff's absence would have on the women's basketball

program.  <u>Id.</u> at 24.  These concerns constitute a legitimate, non-discriminatory reason for

Professor Francois' recommendation that Plaintiff's employment contract not be renewed.

      c.      Pretext

Since Defendant has articulated a legitimate, non-discriminatory reason, the burden shifts

back to Plaintiff to show that Defendant's reason was pretextual or unworthy of belief.  <u>Kendrick</u>,

220 F.3d at 1226.  Here again, Plaintiff fails to make an argument that Defendant's legitimate,

non-discriminatory reason is pretextual.  Furthermore, there is no admissible evidence of pretext

contained in the record.

Plaintiff introduces evidence that Professor Francois harbors a discriminatory animus

against Hispanics, and that in the distant past he had used racial slurs that were derogatory toward

Hispanics.  Plf. Mem. (Doc. No. 47) Ex. 1 at 59-60; Ex. 3 at 104-05; Ex. 6-2.  Yet, Plaintiff fails

to show that any nexus exists between Professor Francois' alleged discriminatory animus and his

threat to recommend that Plaintiff's employment contract not be renewed. Accordingly, this

evidence is insufficient to support a showing of pretext.  See McKnight, 149 F.3d at 1129.

Plaintiff also claims that Professor Francois' treatment of Plaintiff violated established

University policy.  Plaintiff asserts that Professor Francois' decision to meet with disgruntled

members of the women's basketball team to discuss Plaintiff's performance as Head Coach was

not "normal practice" within the Athletic Department.  This argument does not establish that

Professor Francois violated a policy concerning the adverse employment action at issue, and it

does not support a reasonable inference of pretext.  See Kendrick, 220 F.3d at 1230.

Plaintiff provided an affidavit dated October 29, 2003 from University Human Resources

Director Wilton Rogers. Plf. Mem. (Doc. No. 47) Ex. 6-4. In that affidavit, Mr. Rogers asserts

that Professor Francois did not follow University policy in requesting Plaintiff's resignation as

Head Women's Basketball Coach.  Id.  Specifically, Mr. Rogers asserted in his October 29, 2003

affidavit that he would have expected Professor Francois to inform him that Professor Francois

had requested Plaintiff's resignation.  However, by an affidavit dated December 29, 2003, Mr.

Rogers withdrew his prior October 29, 2003 affidavit. (Doc. No. 64).  Furthermore, in his

December 29, 2003 affidavit, Mr. Rogers asserts that, after having reviewed notes of a meeting

between him and Professor Francois, he recalls that Professor Francois did inform him about the

request for Plaintiff's resignation.  Id.  In addition, Mr. Rogers attests that Professor Francois did

not violate any University policy or procedure in requesting Plaintiff's resignation.  Id.

Moreover, Plaintiff has not shown that Professor Francois' request for her resignation constitutes

an adverse employment action under Title VII.  Accordingly, this evidence is insufficient to establish a showing of pretext.

Since Plaintiff has failed to show any evidence of pretext, Defendant is entitled to summary judgment for Plaintiff's claim of retaliatory treatment arising from the incidents that occurred during her April 12, 2002 meeting with Professor Francois.

THEREFORE, it is ORDERED that:

1.     Plaintiff's Motion to Strike is DENIED;

2.     Defendant's Motion to Strike is DENIED;

3.     Defendant's Motion for Summary Judgment is GRANTED.

_____
SENIOR UNITED STATES DISTRICT JUDGE

24